## SANBORN *vs.* HUNT.

**ERROR TO CIRCUIT COURT, WINNEBAGO COUNTY.**

Heard September 27, 1859.]                    [Decided January 4, 1860.

*Replevin—Goods Sold and Delivered.*

Where S. sold a stock of goods to M., taking a mortgage as security for his pay on the goods, and after forfeiture M. re-delivered the goods to S. with other goods originally belonging to M., from which last S. was to receive enough to replace

Sanborn vs. Hunt.

any deficiency which on taking an inventory might be found in the stock sold by S., and return the balance to M.; but, before completing the inventory, the sheriff levied upon the whole stock by virtue of an execution issued against M., and took them from the possession of S., who brought replevin against the sheriff for taking the goods, &c.: Held, that as to that part of the stock sold to M., S. took an absolute title without any further act on the part of either party ; but as to that portion originally belonging to M., and from which S. was to make up the deficiency after taking the inventory, the title would not pass until the inventory was completed.

The case of *Sewell vs. Eaton*, 6 Wis., 490, considered and approved.

The facts in this case are sufficiently stated in the opinion of the court.

*Abell & Bouck*, for the plaintiff in error.

*By the Court*, COLE, J.    We are of the opinion that some of the instructions given by the circuit judge to the jury on the trial of this cause were erroneous.    The circuit judge charged the jury, among other things, that if they should find that the plaintiff was in possession of the goods in controversy under the bill of sale or contract offered in evidence, and if any thing remained to be done under the same, such as taking an inventory, measuring goods, &c., that then the defendant was entitled to recover.    And, again, he instructed the jury that the property did not become vested in the plaintiff, and that the plaintiff acquired no interest therein until an inventory was taken, as provided by the agreement between the parties, and that consequently the plaintiff had no claim or interest in and to the property.

It appeared from the evidence in the case that the plaintiff in error sold a certain stock of drugs, medicines, &c., to one Hiram Miltimore, on the 19th of August, 1857, upon credit, taking four promissory notes for the consideration money which notes were secured by a chattel mortgage upon the stock of goods sold, and other goods belonging to Miltimore. Miltimore not being able to meet his notes as they became

due proposed to the agent of Sanborn, that the goods remaining unsold of the Sanborn stock should be taken back, and that a sufficient amount of the goods originally belonging to him should also be taken by Sanborn to supply any deficiency which might be found to exist in such stock when an inventory should be taken; and to indemnify Sanborn for any expenses, &c., which he might have incurred in consequence of Miltimore's inability to meet his engagements. Thereupon, on the 17th of December, 1857, an agreement in writing was entered into between the parties which after referring to the time and condition of the sale made in August; and that Miltimore had become unable to meet his notes, contains, among other things, the following clause: "And, whereas, the said party of the second part has been put to great loss and inconvenience on account thereof, (the inability of Miltimore to meet his notes); now, therefore, in consideration thereof, and of the covenants and agreements hereinafter contained the said party of the first part agrees to sell and does hereby sell to the said party of the second part all the right, title and interest of said party of the first party in and to the above described property heretofore purchased of the said party of the second part." Some subsequent negotiations were had between the parties in reference to abrogating this ageeement and permitting Miltimore to retain possession of the goods, upon condition that he paid the first note given in August, but these subsequent agreements were not fulfilled, and, therefore, they need not be further noticed. Sanborn, by his agent, went into possession of the store and stock of goods under the agreement of the 17th of December, and was in actual possession of the entire stock formerly belonging to Miltimore, taking an inventory when the same was levied upon by the defendant in error, who was the sheriff, under executions issued upon judgments against Miltimore.

From these remarks the materiality of the instructions before cited become apparent. The circuit judge charged the jury that though the plaintiff was in possession of the goods under the bill of sale; yet, if any thing remained to be done, such as taking an inventory, &c., that the action could not be maintained. Now, we think it very clear, from the whole scope and meaning of the contract under which Sanborn went into possession of the goods, more particularly from the language of the clause just referred to, that it was the intention of Miltimore to transfer the title to all the goods which he had purchased of Sanborn, and of Sanborn to accept such goods without any further act in the premises. The sale of these goods was intended to be an absolute transfer and the taking of the inventory was only for the purpose of ascertaining the amount of the deficiency. Such being the case, the sale of those goods was absolute and complete. *Sewell vs. Eaton*, 6 Wis., 490; and authorities in the opinion. In relation to the stock of goods which originally belonged to Miltimore it might perhaps be correct to say that the title to them would not pass until an inventory had been taken and the deficiency in the Sanborn stock ascertained. But this could not be true of the latter stock, about which nothing further had to be done to complete the sale. Since, therefore, the circuit judge did not discriminate in his instructions as to the law applicable to these different stocks of goods, but held that the plaintiff in error acquired no title to any of the property, until an inventory had been taken, we think a new trial must be granted upon that ground.

The judgment of the circuit court is reversed, and a new trial ordered.